(December 17, 2009)

NELSON SANTIAGO et al., Respondents, v FRED-DOUG 117, L.L.C., et al., Appellants. (And a Third-Party Action.) [891 NYS2d 59]—

Labor Law § 240 (1) imposes a duty to protect workers engaged in "the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure." While "repair" of a broken or malfunctioning item is among the statute's enumerated activities, "routine maintenance" to prevent malfunction is not covered activity (*Esposito v New York City Indus. Dev. Agency*, 1 NY3d 526, 528 [2003]; *see Craft*

*v Clark Trading Corp.*, 257 AD2d 886, 887 [1999]). Plaintiff testified that he went to the Rite Aid pharmacy in response to a service call that the air conditioning was broken. The Rite Aid manager confirmed that he had called Concept, plaintiff's employer, to have the air conditioning fixed because the front of the store was excessively hot. However, the Concept service manager testified that he had dispatched plaintiff to the Rite Aid that day to complete maintenance work begun three days earlier. A Concept work order and invoice also indicate that plaintiff was doing maintenance work, changing filters and belts, and cleaning coils on three HVAC units to prevent future problems. These discordant versions of the facts preclude a determination, as a matter of law, as to whether plaintiff was doing covered repair work or nonactionable routine maintenance on the date of his accident.

Assuming a factfinder determines that plaintiff was involved in covered repair work, the evidence raises the further issue of whether plaintiff's own actions were the sole proximate cause of his injuries (*see Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 290 [2003]; *Lovall v Graves Bros., Inc.*, 63 AD3d 1528, 1530 [2009]; *Lopez v Bovis Lend Lease LMB, Inc.*, 26 AD3d 192 [2006]; *Meade v Rock-McGraw, Inc.*, 307 AD2d 156 [2003]). Plaintiff testified that he was standing on an open eight-foot A-frame ladder placed sideways and secured about a foot from an open door to the Rite Aid manager's office, and that the store manager bumped the ladder as he squeezed past plaintiff to exit the office. Plaintiff stated that he fell off the ladder when it was bumped a second time, and after falling, he saw that the manager had reentered his office. In contrast, the store manager testified that he saw plaintiff lean a closed ladder against the wall, unsecured, that he warned plaintiff that this was not safe, and that plaintiff replied that he knew what he was doing. He also testified that while the ladder blocked the doorway to his office, there was enough space for him to get through. This testimony raises the factual issue of whether plaintiff misused an otherwise adequate ladder by leaning it, unsecured, against the wall, after which the ladder slipped as he was moving on top of it. Concur—Gonzalez, P.J., Saxe, McGuire, Acosta and Román, JJ.